IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

| | |
|---|---|
| VICTOR ARIZA,<br><br>      Plaintiff,<br><br>v.<br><br>SHOE SHOW, INC.<br>d/b/a SHOE SHOW MEGA,<br><br>      Defendant. | Case No. 0:22-cv-60547-AHS |

**DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT**

Defendant Shoe Show, Inc. d/b/a Shoe Show Mega ("Shoe Show"), by and through its undersigned counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, moves the Court to dismiss Plaintiff Victor Ariza's ("Plaintiff") Amended Complaint ("Complaint") for failure to state a claim upon which relief can be granted. In support, Shoe Show states as follows:

**MEMORANDUM OF LAW IN SUPPORT**

**I.     INTRODUCTION**

Plaintiff seeks declaratory and injunctive relief for alleged violations of Title III of the Americans with Disabilities Act ("ADA") claiming that he visited Shoe Show's website, https://www.shoeshowmega.com (the "Website"), and it contained barriers that denied accessibility to blind and visually disabled individuals. Plaintiff filed his initial Complaint on March 14, 2022, (ECF No. 1), and Shoe Show moved to dismiss on April 19, 2022, (ECF No. 17). Rather than responding to Shoe Show's motion, Plaintiff amended his complaint on May 3, 2022, (ECF No. 18), attempting to correct his initial pleading deficiencies.  However, even the Amended Complaint fails to correct these deficiencies, and Shoe Show again moves to dismiss Plaintiff's

ADA claim because websites are not places of public accommodation and the Amended Complaint fails to establish that the Website presents an intangible barrier under the ADA.

Since Plaintiff filed the initial Complaint, Shoe Show hired eSSENTIAL Accessibility, a company that specializes in making corporate websites fully accessible to disabled individuals. As of the date of the filing of the Amended Complaint, Shoe Show updated its Website[1] to include an accessibility statement, with compatibility software, and a universal symbol for the disabled. (Ex. A pp. 1–3). As a result, many of the alleged accessibility barriers alleged in the initial Complaint, Mr. Moody's Declaration (dated July 28, 2021 and unchanged since the initial filing), and the Amended Complaint have been addressed.

## II.   STATEMENT OF RELEVANT FACTS

Plaintiff is a "tester" who regularly monitors websites to see if they are fully accessible to him.[2] (ECF No. 18 at ¶ 5). Plaintiff is blind and cannot use a computer without auxiliary aids, screen reader software, and other technology assistance. (*Id.* at ¶¶ 5–6). In order to view a website, Plaintiff has to use screen reader software that translates the visual internet into an auditory equivalent. (*Id.* at ¶ 6). In his role as a "tester," Plaintiff attempted to use Shoe Show's Website in July of 2021 and in March of 2022. (*Id.* at ¶¶ 20–21).

As Plaintiff describes it, the Website "serves to augment Defendant's physical stores" (*id.*

---

[1] Because Plaintiff discusses the Website at length in his Amended Complaint, the Website is integral to the Amended Complaint and may be considered on a Motion to Dismiss. *Wright v. Waste Pro USA, Inc.*, No. 0:19-CV-62051, 2020 WL 8230193, at *5 (S.D. Fla. May 28, 2020) ("[E]xhibits attached to a motion to dismiss may be considered by a court, without converting the motion into one for summary judgment, only if the attached documents are (1) central to the plaintiff's claim; and (2) undisputed."). Therefore, Shoe Show will include relevant pages from its Website attached as Exhibit A to this Motion.

[2] For other similar cases brought by Plaintiff, *see generally*, *Ariza v. Agent Provocateur Int'l (US) LLC*, No. 21-CV-20931, 2021 WL 2312871 (S.D. Fla. June 7, 2021); *Ariza v. Walters & Mason Retail, Inc.*, No. 20-CV-25047, 2021 WL 354187 (S.D. Fla. Feb. 1, 2021); *Ariza v. Untuckit, LLC*, No. 19-CV-24291, 2020 WL 408241 (S.D. Fla. Jan. 24, 2020).

at ¶ 49) by providing information that would help him pre-shop and plan visits to physical store locations, (*Id.* at ¶¶ 18, 19). Plaintiff generally alleges that the Website is a point of sale for merchandise "available in, from, and through" Shoe Show's physical stores, but he does not allege that it is the sole point of sale. (*Id*. at ¶ 12). Rather, the Amended Complaint details services and merchandise that are available <u>both</u> online and in Shoe Show physical stores. (*Id*. at ¶ 15).

In detailing the services offered by the Website, Plaintiff claims that the Website allows the public to secure information about its physical stores, to purchase merchandise that is <u>also available</u> for purchase from the physical stores, purchase gift cards for use in the physical stores, arrange for in-store pickups and returns, and sign up for an emailer to receive offers and promotions for use online and in the physical stores. (*Id.* at ¶¶ 14, 15). At no point, however, does Plaintiff identify services or merchandise that are <u>only</u> available on the Website. At most, he alleges that the merchandise online may not necessarily be in a store that he intends to patronize at some point in the future. (*Id*. at ¶¶ 14, 15).

Plaintiff then lists a number of alleged accessibility barriers with his available screen reader software, claiming that these incompatibilities render the Website inaccessible.[3] (ECF No. 18 ¶¶ 9, 20–21, 37, 64). Plaintiff itemizes these incompatibilities mainly in paragraph 21, claiming that features such as product price, description, availability, and size are inaccessible, including in the quick view screen and shopping bag, and that general text and pictures on the Website are not properly labeled. (*Id*. at ¶ 21). Notably, while Plaintiff attaches to his Amended Complaint a declaration speaking to the alleged deficiencies on the Website, this declaration is the same from

---

[3] If this Court is inclined to consider the Website itself, Shoe Show will note that some of the alleged functionality errors are inaccurate. For example, Plaintiff alleges that the Website does not offer a universal symbol for the disabled that would allow disabled persons to access the accessibility information, but that allegation is inaccurate. (*Compare* ECF No. 18 p, 17, FN 1 *with* Ex. A pp. 2–3).

3

the initial complaint and does not take into account the accessibility statement now available on the Website. Yet, the Amended Complaint alleges that the Website fails to meet the Web Content Accessibility Guidelines (WCAG)[4] with a particular focus on the Website's accessibility statement, claiming that the accessibility statement does not "provide a viable alternative means to quickly, effectively, and equally access and navigate the Website." (*Id*. at ¶ 22). Finally, Plaintiff alleges that the Website does not offer a universal symbol for the disabled that would allow disabled persons to access the accessibility information. (*Id*. at ¶¶ 57, 68 FN 1).

What is noticeably missing from the Amended Complaint is any allegation connecting the alleged accessibility barriers in paragraph 21 (and subsequent paragraphs) to the denial of services that are available on the Website and in the physical store location. For example, Plaintiff does not allege his lack of accessibility to the product price of a certain product prevents him from purchasing that product online or in stores. One obvious explanation for Plaintiff's omission is that the allegations in the Amended Complaint make clear that Plaintiff has not attempted to visit a physical store location and, therefore, cannot allege any actual barrier to a physical store location. Plaintiff alleges that he "is interested in patronizing, and intends to patronize [a Shoe Show store] in the near future," but he has not alleged definitive plans to visit a physical store and has not, in fact, visited a physical store.[5] (*Id.* at ¶ 17). He alleges that he plans to visit a physical store "once the Website's access barriers are removed or remedied," (*id.*), but he does not allege that the alleged inaccessibility of the Website prevents him from accessing the services of Shoe Show's

---

[4] Defendant is not legally required to follow the WCAG Guidelines, but it has made an affirmative commitment to do so. (Ex. A p. 1).

[5] Even the Declaration of Robert D. Moody submitted in support of the Amended Complaint is limited to Mr. Moody's audit of the Website and does not address how the alleged limitations on the Website affect Plaintiff's ability to use a physical store location. (Doc. 18-1). The Declaration is limited to the alleged barriers associated with the effective use and enjoyment of the Website alone. (*Id.*).

physical stores.

### III. PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY.

Plaintiff's Amended Complaint should be dismissed because Plaintiff's ADA claim fails to plausibly state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure consistent with the Eleventh Circuit's reasoning in *Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266 (11th Cir.), *vacated on reh'g*, 21 F.4th 775 (11th Cir. 2021) and *Rendon v. Valleycrest Productions, Ltd.*, 294 F.3d 1279 (2002).

#### A. <u>Standard of Review</u>

A complaint should be dismissed for failure to state a claim upon which relief can be granted if the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Hood v. Perdue*, 540 F. Supp. 2d 1350, 1356 (11th Cir. 2008) (citations omitted). While a complaint's factual allegations are presumed true and all reasonable factual inferences must be construed in the plaintiff's favor, a court need not accept inferences drawn by the plaintiff which are unsupported by the facts set out in the complaint. *Id.* (citations omitted). Neither is the Court required to credit "conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts." *Oxford Asset Mgmt., Ltd. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir. 2002). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Instead, a complaint must "allege some specific factual bases for those conclusions" to avoid dismissal. *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263 (11th Cir. 2004).

   **B.**  **Count I – Violation of the ADA Should Be Dismissed Because Plaintiff Has Failed to State a Claim for Which Relief Can Be Granted**

  The ADA does not address accessibility requirements for websites. Nor does the ADA address whether websites offered for or by places of public accommodation must be fully accessible to persons covered by the ADA. *See Gomez v. Bang & Olufsen Am., Inc.*, No. 1:16-CV-23801, 2017 WL 1957182, at *4 (S.D. Fla. Feb. 2, 2017). At most, case law interpreting the ADA requires that websites offered by places of public accommodation must not impede a disabled person's use and enjoyment of the place of public accommodation.

  Because the Website is not a place of public accommodation under the ADA, it is not held to the same strict accessibility standards as physical places of accommodation as promulgated by statutes and regulations. Yet, Plaintiff seemingly conflates the two in the Amended Complaint. The only proffered guidance is through WCAG, which provides voluntary guidance on website accessibility to companies, but even WCAG does not provide a legal standard of accessibility. In this case, Shoe Show's brick-and-mortar stores are places of public accommodation under the ADA. Its Website, however, is not. While Plaintiff alleges that the Website limits his online access to products that are also offered in physical stores and is inconvenient to him, the Amended Complaint fails to plausibly allege how the Website actually prevents his full use and enjoyment of the goods and services offered at Shoe Show's physical locations.

  Recently the Eleventh Circuit decided, as an issue of first impression, whether websites are public accommodations under Title III of the ADA. *Gil*, 993 F.3d at 1275. In *Gil*, the plaintiff challenged the accessibility of Winn-Dixie's limited use website, which offered customers the opportunity to refill existing prescriptions for in-store pickup, and to link digital coupons to the Winn-Dixie rewards card for discounts. *Id*. at 1270. The website did not allow for purchases of prescriptions on the website itself—all purchases had to be made in the store. Prior to using the

website at issue, the plaintiff frequented the physical Winn-Dixie store to refill his prescriptions. *Id.* When he learned that Winn-Dixie had a website, the plaintiff preferred to use the website to refill his prescriptions instead of visiting the store and explaining what he needed to the pharmacist. *Id.* at 1272. After being unable to use the website in the way he wanted to, the plaintiff stopped going to Winn-Dixie stores not because of the change in the physical access available to him but because of his frustration with the functionality of the website. *Id.* After a bench trial finding in favor of the plaintiff, Winn-Dixie appealed to the Eleventh Circuit. *Id.* at 1272–73.

The Eleventh Circuit held that websites are not public accommodations for purposes of the ADA and thus a disabled person's inability to access and communicate with a website itself is not a violation of Title III. *Id.* The court also held that Winn-Dixie's website did not create an intangible barrier to a place of public accommodation because despite the inconveniences of the website, nothing prevented the plaintiff from refilling his prescriptions at a physical Winn-Dixie Store. *Id.* at 1279–80.

*Gil* was subsequently vacated on rehearing as moot because of a procedural issue: the injunction upon which the litigation was based expired and the Eleventh Circuit lacked the jurisdiction to decide the appeal. *Gil v. Winn-Dixie Stores, Inc.*, 21 F.4th 775, 776 (11th Cir. 2021). However, the opinion was not vacated because of any change in law that would invalidate the reasoning underlying the Court's conclusions therein. Thus, this Court should adopt the reasoning of *Gil* as persuasive authority in deciding the issues in this case, as it forecasts how the Eleventh Circuit would evaluate Plaintiff's ADA claim. *Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1218 (11th Cir. 2009) (noting courts are "free to give statements in a vacated opinion persuasive value" if warranted); *United States v. Mejia-Duarte*, 780 F. App'x 730, 737 (11th Cir. 2019) (giving a vacated opinion persuasive effect when it was vacated on a wholly

7

separate issue). Yet even beyond *Gil*, the Eleventh Circuit's decision in *Rendon v. Valleycrest Productions, Ltd.*, 294 F.3d 1279 (2002) supports dismissal of Plaintiff's ADA claim because Plaintiff has failed to plead sufficient facts to demonstrate that Shoe Show's Website is an intangible barrier to Plaintiff's use and enjoyment of Shoe Show's physical stores, as is required by *Rendon* to bring a claim based on a violation of Title III of the ADA.

### 1. The Eleventh Circuit's Reasoning in *Gil* Warrants Dismissal of Plaintiff's ADA Claim

Based on the text of the ADA itself and other Eleventh Circuit precedent, *Gil* set forth a clear two-step analysis to deciding whether a website's alleged inaccessibility violates Title III of the ADA: (1) whether the website is a place of public accommodation in and of itself, such that its inaccessibility violates Title III; <u>and</u> (2) if the website is not a public accommodation, whether it otherwise violates Title III as an "intangible barrier" to a place of public accommodation under *Rendon*. *Gil*, 993 F.3d at 1274–78.

*Gil* concluded that websites are not public accommodations under Title III of the ADA based on a plain reading of the text of Title III. Title III defines "public accommodation" by providing "an expansive list of physical locations." *Id.* at 1276. As noted by the court, this list "does not include websites." *Id.* Rather, all twelve types of locations are "tangible, physical places. No intangible places or spaces, such as websites, are listed." *Id.* at 1277. Accordingly, the plain and unambiguous language of Title III of the ADA limits public accommodations to "actual, physical places" and does not include websites. *Id.* As such, a plaintiff's inability to access and communicate with a website itself is not a violation of Title III. *Id.* Thus, Plaintiff

cannot support his ADA claim based on the alleged inaccessibility of the Website itself as a public accommodation under Title III.[6]

The Eleventh Circuit's conclusion that Title III's definition of "public accommodation" does not include websites is based on a straightforward analysis of the plain statutory language of the ADA. The ADA is clear on its face that "public accommodations" are limited to tangible, physical locations. *See* 42 U.S.C. § 12181(7). If the legislature wishes to broaden the scope of Title III, it may do so. But it is not the role of the judiciary to broaden the scope of an otherwise unambiguous statute. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" (internal citation omitted)). Thus, *Gil*'s persuasive authority interpreting the plain language of the ADA directs that Plaintiff cannot base his ADA claim on the alleged inaccessibility of Shoe Show's Website itself.

### 2. Plaintiff Has Failed to Allege That Shoe Show's Website is an "Intangible Barrier" under *Rendon*

If Plaintiff can allege an ADA claim at all, his claim turns on whether, under *Rendon*, the allegedly inaccessible Website serves as an "intangible barrier" to his full and equal enjoyment of the goods, services, and privileges offered at Shoe Show's physical stores. *Rendon*, 294 F.3d at 1283. *Rendon* did not involve the alleged inaccessibility of a website, but rather an automated hotline used by the gameshow "Who Wants To Be A Millionaire." *Gil* is a helpful analysis of

---

[6] This is also the majority approach in other jurisdictions that have considered the issue. *See Gomez v. Bang & Olufsen Am., Inc.*, No. 1:16-CV-23801, 2017 WL 1957182, at *3 (S.D. Fla. Feb. 2, 2017).

*Rendon*'s application to a website. Under both *Rendon*, generally, and *Gil*, for websites specifically, an "intangible barrier" exists when that barrier operates as a sole access point/point-of-sale to a person's use and enjoyment of the goods, services, and privileges offered at a place of public accommodation. If an individual cannot fully access a website and it is the sole access point for a good or service, then it acts as a barrier to the place of public accommodation. However, when a website is not a sole access point and only acts to augment the services offered at the place of public accommodation, then *Rendon* and *Gil* instruct that an intangible barrier does not exist and the ADA claim is subject to dismissal.

### i. *The Allegations in the Amended Complaint do not Establish that the Website was the sole point of access.*

Notably in *Rendon*, the automated hotline was the sole point of access for contestant selection and, therefore, enjoying the privileges offered by the defendant gameshow. *Rendon*, 294 F.3d at 1280–81. There, the plaintiffs challenged the automated hotline that was used to select contestants for the gameshow. *Id.* at 1280. The hotline was inaccessible to persons who were deaf or had upper-body mobility impairments. *Id.* Thus, the hotline's inaccessibility was a complete barrier to their ability to be considered for the show. *Id.* Therefore, the use of the hotline prevented deaf individuals from the use and enjoyment of the defendant's public accommodation (the game show). *Id.* at 1286.

The Eleventh Circuit in *Gil* and its progeny have clarified that an "intangible barrier violates Title III where it impedes a physical venue's <u>sole access point</u> and prevents a plaintiff from accessing a privilege of a physical place of public accommodation." *Mahlberg v. Pinch-A-Penny Inc.*, No. 6:21-CV-143, 2021 WL 2942675, at *4 (M.D. Fla. Apr. 20, 2021) (emphasis added); *see also Poschmann v. Tradewinds of Sanibel, LLC*, No. 2:21-CV-303-JES-MRM, 2021 WL 3190557, at *2 (M.D. Fla. July 28, 2021). This is precisely how the Court viewed *Rendon* in

*Gil*, where the Eleventh Circuit expressly rejected the trial court's reasoning that a website was so "heavily integrated" with a physical store just because certain activities could be done online to assist in the customer's physical store experience. *Gil*, 993 F.3d at 1279. Under its *Rendon* analysis, the Eleventh Circuit in *Gil* focused on whether the website was a "point of sale" for Winn-Dixie's physical stores. There, the website was not a point of sale—all purchases had to occur in-store. *Id.* Even services initiated online (like prescription pick-ups) still had to be completed in-store. *Id.* The court reasoned, therefore, that the inaccessibility of the website did not prevent the plaintiff from enjoying the goods, services, and privileges offered at physical Winn-Dixie locations. *Id.* Accordingly, the court held that the website was not an "intangible barrier" to accessibility. *Id.* at 1280. The plaintiff's ADA claim, therefore, was dismissed. *Id.* at 1284.

Here, Plaintiff does not allege that Shoe Show's Website was a sole access point to the use and enjoyment of Shoe Show's physical stores or any component therein. Rather, Plaintiff merely alleges that the Website "acts as <u>a</u> point of sale for merchandise <u>available in, from, and through</u> [Shoe Show's] physical stores." (ECF No. 18 ¶ 12 (emphasis added)). Plaintiff does not allege that any goods or services offered on the Website are Plaintiff's <u>only</u> access to those goods or services; rather, he alleges that the Website augments the physical stores. (*Id.* ¶ 56). In fact, Plaintiff specifically alleges that the Website allows customers to purchase Shoe Show merchandise "that is <u>also</u> available from and in its physical stores." (*Id.* ¶ 14 (emphasis added)).

Far from the facts in *Rendon*, Plaintiff's allegations paint the picture that a Shoe Show customer has multiple access points to use and enjoy the goods, services, and privileges offered by Shoe Show. Indeed, Plaintiff's Amended Complaint is notable for what it does not allege: it does not allege that any of the goods, services, or privileges offered on the Website are <u>only</u>

11

available on the Website or that something <u>must</u> occur online before a customer can complete a service offered in-store. Indeed, "nothing prevents [Plaintiff] from shopping at the physical store" and being entitled to all the goods, services, and privileges offered by Shoe Show there. *Gil*, 993 F.3d at 1279. In contrast to the contestants who were fully deprived of participating in the gameshow in *Rendon* by the hotline's barrier, nothing about the Website bars Plaintiff from accessing the services available in Shoe Show's physical stores.

### ii. The Allegations in the Amended Complaint do not Establish that Shoe Show's Website Impedes Access to the Physical Store.

Importantly, the "intangible barrier" must be a barrier to the use and enjoyment of Shoe Show's <u>physical stores</u>, not a barrier to the use and enjoyment of Shoe Show's <u>Website</u>. Title III provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations <u>of any place of public accommodation</u>[.]" 42 U.S.C. § 12182(a) (emphasis added). The preposition "of" here connects "full and equal enjoyment" to "public accommodation[.]" It is this statutory language that the Court in *Rendon* focuses on in devising the "intangible barrier" analysis. *Rendon*, 294 F.3d at 1282. Indeed, the court in *Rendon* framed the issue before it as whether the automated hotline "screen[ed] out disabled persons from participation in a competition <u>held in a tangible public accommodation</u>." *Id.* (emphasis added). *Gil*, and the majority of courts in other jurisdictions that have also confronted this issue, have viewed intangible barriers in the same light. *Gomez*, 2017 WL 1957182, at *3 ("[T]he majority of courts agree that websites are not covered by the ADA unless some function on the website hinders the full use and enjoyment of a <u>physical space</u>." (emphasis added)).

The Amended Complaint, on the other hand, hinges on the alleged accessibility barriers to the <u>Website itself</u>. And yet, these allegations are not even entirely accurate based on a close look

12

at the Website, which is integral to the Amended Complaint. For example, the Website has an accessibility statement that pledges to conform to Web Content Accessibility Guidelines and contains a universal symbol for the disabled. (Ex. A p. 1–3).

But even if these functionality barriers existed on the Website that impeded a point of sale <u>on the Website</u>, full access and functionality of the Website is not the final answer in *Rendon* – the access to the physical store location is. In order to sufficiently make out an ADA claim based on a website's barriers, the plaintiff must make it clear how the website interacts with the place of public accommodation (i.e., the physical store) and how the website impedes the plaintiff's <u>physical</u> access. *Mahlberg*, 2021 WL 2942675, at *4. Here, the allegations in the Amended Complaint do not establish that Plaintiff cannot fully use and enjoy the goods and services at a physical Shoe Show location. The Amended Complaint does not allege that Plaintiff has visited a Shoe Show store. The Amended Complaint does not allege that the Website is the sole point of sale because some merchandise is <u>only</u> available online, only that it may not be at the store that Plaintiff intended to patronize. But the fact that merchandise <u>may</u> only be available online because the specific merchandise <u>may</u> not be available at the store that Plaintiff <u>intends</u> to patronize at some unidentified date in the future is insufficient. *Gomez*, 2017 WL 1957182, at * 4 ("To survive a motion to dismiss, Plaintiff must claim an actual (not hypothetical) impediment to the use of Defendant's retail location."). The Amended Complaint has conclusory allegations that Plaintiff has been denied "full and equal access to and enjoyment of the goods, information, and services that Defendant has made available to the public on its Website and in its physical stores," but these boilerplate statements are not plausible without factual support. (ECF No. 18 at ¶ 54).

At best, the Amended Complaint alleges that Plaintiff is unable to participate in "the same shopping experience, with the same access to merchandise, sales, discounts, and promotions as

13

provided at the Website and in the physical stores." (*Id.* at ¶ 23). Similar to the plaintiff in *Gil*, Plaintiff focuses on (1) services on the Website that are <u>also available</u> in the store and (2) conveniences of the Website that are unavailable to him, like the ability to pre-shop and educate himself on merchandise and to avoid the inconveniences of traveling outside of his home.[7] (*Id.* at ¶¶ 18–20). But the ADA does not guarantee the identical shopping experience, *see Gomez*, 2017 WL 1957182, at *4; it guarantees that the Website not serve as an impediment to the physical shopping experience, and Plaintiff does not allege that he has been prevented from accessing the services of the physical store. Similarly, in the Declaration of Mr. Moody, attached as Exhibit A to the Amended Complaint, Mr. Moody concludes that the Website's "defects act as a barrier to the effective use and enjoyment <u>of the site</u> for persons with low to no vision," but he does not discuss how the Website impedes the full use and enjoyment of the physical store. (Ex. A to ECF No. 18, p. 4 (emphasis added)). This is not sufficient to make a claim under the ADA.

Accordingly, the Website does not constitute an "intangible barrier" to Plaintiff's ability to access and enjoy fully and equally Shoe Show's physical stores and, consequently, Plaintiff's alleged inability to access the Website does not violate Title III of the ADA.

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss this action in its entirety, because Plaintiff has failed to state a claim upon which relief may be granted.

---

[7] Plaintiff also alleges that traveling outside of his home is a difficult and frightening experience and that he was left feeling excluded because he was unable to participate in the same shopping experience. (ECF No. 18 ¶¶ 18, 23). Yet this Court rejected the same argument from the plaintiff in *Gomez,* 2017 WL 1957182, at *4, noting that his general grievances were unconnected to any harm that he suffered at the actual place of public accommodation and were, therefore, insufficient to survive a motion to dismiss.

Dated: May 17, 2022          Respectfully submitted,

**FOX ROTHSCHILD LLP**

*/s/ Patricia M. Flanagan*
Patricia M. Flanagan
FL Bar No. 58592
777 South Flagler Drive
Suite 1700, West Tower
West Palm Beach, FL 33401
Tel.: (561) 804-4477
Fax: (561) 835-9602
Email: pflanagan@foxrothschild.com

Lisa M. Williford
*(pro hac vice)*
230 N. Elm Street, Suite 1200
Greensboro, NC 27401
Tel: (336) 378-5200
Fax: (336) 378-5400
Email: LArthur@foxrothschild.com

*Counsel for Defendant Shoe Show, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 17, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By: <u>/s/ <em>Patricia M. Flanagan</em></u><br>
Patricia M. Flanagan